IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 02-cv-1413-MSK-BNB

JOHN SCOTT HORNAFIUS and
JOEL H. MANESS,

    Plaintiffs,

v.

EXXON MOBIL CORPORATION,
MOBIL CORPORATION EMPLOYEE SEVERANCE PLAN,
JAN MADIGAN,
CHRIS O'FLINN,
TOM HARRISON, and
ROD LEIS,

    Defendants.

## ORDER ON PENDING MOTIONS (#261, #262, #263 AND #300)

THIS MATTER comes before the Court on the following motions: (1) Plaintiff Hornafius' Motion to Alter or Amend Judgment Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to Include Prejudgment Interest and Motion for Leave to Conduct Discovery on Moratory Rate of Interest **(#261)**; (2) Plaintiff Hornafius' Application for Award of Attorney Fees and Costs **(#263)**; (3) Defendants' Motion for Attorney Fees with Respect to Class Proceedings **(#262)**; and (4) the parties' Stipulated Motion to Revise Judgment Pursuant to Fed. R. Civ. P. 60(b)(6) **(#300)**. Having considered such motions and any responses and replies

thereto, the Court

**FINDS** and **CONCLUDES** that:

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### II. Background

On January 14, 2005, the Court entered judgment in favor of Plaintiff Hornafius and against all Defendants after concluding that he was entitled to severance benefits under the Mobil Corporation Employee Severance Plan ("the Plan"). As to Plaintiff Maness, however, the Court entered judgment in favor of the Defendants.

The parties have filed a Stipulated Motion to Revise Judgment Pursuant to Fed. R. Civ. P. 60(b)(6) identifying the issues upon which they agree and disagree. For instance, the parties have reached an agreement regarding the amount of benefits to which Plaintiff Hornafius is entitled.[1] They also agree that the money judgment should be entered only against Defendants Exxon Mobil Corporation and the Plan, not against all Defendants. They further stipulate that as to the remaining Defendants, the judgment should declare only that such Defendants "act in accordance with the money judgment." The meaning of this statement is not clear.

The Stipulated Motion to Revise Judgment clarifies that the parties continue to disagree about whether Plaintiff Hornafius may recover prejudgment interest, attorney fees and costs.

---

[1] They agree that he is entitled to severance benefits in the amount of $182,014.17, as well as other benefits.

They ask the Court to allow them to file an amended form of judgment after the Court resolves these remaining disputed issues.

### III.  Analysis

#### A.  Prejudgment Interest

Plaintiff Hornafius seeks to recover prejudgment interest on his award of Plan benefits dating back to May 8, 2000, when the Defendants denied his initial request for Plan benefits. The Defendants contend that such an award would be inequitable because Plaintiff Hornafius waited approximately two years to commence this action and then complicated it by attempting to pursue class claims.

Prejudgment interest may be awarded in ERISA cases.  *See Allison v. Bank-One Denver*, 289 F.3d 1223, 1243 (10th Cir. 2002).  An award of prejudgment interest is proper if it compensates the injured party and is "otherwise equitable." *See id.* Delays in commencing a civil action are one factor the Court may consider in determining the appropriate starting time for an award of prejudgment interest. *See Caldwell v. Life Ins. Co. of North America*, 287 F.3d 1276, 1286 (10th Cir. 2002). When such award is appropriate, the Court may use the interest rate set forth in § 5-12-102, C.R.S. and is not required to employ the interest rate set forth in 28 U.S.C. § 1961, as long as the eventual award of interest is not punitive. *See Allison*, 289 F.3d at 1243-44.

The Court begins with Plaintiff Hornafius' request to conduct discovery to determine a moratory interest rate. He argues that pursuant to § 13-21-101, C.R.S., he may elect between a

moratory interest rate and 8% per annum.[2]

The Defendants argue that the Court should apply the post-judgment interest rate set forth in 28 U.S.C. § 1961,[3] which is a post-judgment interest rate keyed to the yield on Treasury bonds. No argument is made as to the operative date the Defendants believe should apply. Alternatively, the Defendants argue that the Court should apply Virginia law as provided for in the Plan.

---

[2] This statute provides:
> (1) Except as provided in section 13-21-101, C.R.S., when there is no agreement as to the rate thereof, creditors shall receive interest as follows:
> (a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,
> (b) Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.

[3] This statute provides in relevant part:
> (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.
> (b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually. . . .
> (c)(4) This section shall not be construed to affect the interest on any judgment of any court not specified in this section.

The Court observes, as is apparent from the Court record and the attorney fees incurred, that this case has been overlitigated by all parties. There is no need to perpetuate the problem with further discovery as to the issue of prejudgment interest. Indeed, given the size of Plaintiff Hornafius' award of severance benefits, the costs of discovery would likely exceed the interest difference between a Treasury rate or a moratory rate and the 8% Colorado statutory rate.[4]

Having considered the equities, the Court finds that Plaintiff Hornafius should recover pre-judgment interest but only from the date of the filing of this suit, not from the date his initial request for benefits was denied. Because of the delay in paying Plaintiff Hornafius Plan benefits to which he was entitled, he was unable to invest the money in his discretion from the date such benefits were denied. An award of prejudgment interest clearly compensates Plaintiff Hornafius. However, it would be inequitable to allow Plaintiff Hornafius to recover prejudgment interest dating back to May 8, 2000. He delayed in commencing this litigation until more than two years later on July 23, 2002 even though he has been represented by the same counsel since 1999.[5] Plaintiff Hornafius offers no explanation for this delay except that "he simply filed suit within the applicable statute of limitations, following due and appropriate consideration of the validity of his claim and other personal factors."

---

[4] The Court observes that 8% of the $182,014.17 in severance benefits owed to Plaintiff Hornafius over a one-year period is $14,561.13. If the moratory rate were 10%, the interest accrued would be $18,201.42. Without compounding, the difference between these amounts for each year would be $3,640.29. Similarly, without compounding, a Treasury rate of 3.76% would result in a difference of $7,717.40 per year. The attorney fees incurred in discovery will likely exceed these differentials.

[5] He commenced this action just less than two years after the Plan Administrator affirmed the denial of benefits.

Because an award of prejudgment interest is an equitable, not a contractual, matter, the Court rejects application of Virginia law. The Tenth Circuit in *Allison* acknowledged that a court may properly use the 8% rate set forth in the Colorado statute rather than the rate prescribed by the federal statute when awarding prejudgment interest in ERISA cases. Given the equities, the Court finds that the 8% rate set forth in § 5-12-102(1)(b), C.R.S., will adequately compensate Plaintiff Hornafius without unduly penalizing the Defendants.

### B. Attorney Fees and Costs

Both Plaintiff Hornafius and the Defendants seek an award of attorney fees pursuant to 29 U.S.C. § 1132(g), which provides:

> (g) Attorney's fees and costs; awards in actions involving delinquent contributions
>> (1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

In deciding whether to award attorney fees under § 1132(g), the Court may consider several factors, including but not limited to: "(1) the degree of the offending party's culpability or bad faith; (2) the degree of the ability of the offending party to satisfy an award of attorney fees; (3) whether or not an award of attorney fees against the offending party would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the plan as a whole; and (5) the relative merits of the parties' positions." *See Deboard v.*

*Sunshine Min. & Refining Co.*, 208 F.3d 1228, 1244 (10th Cir. 2000). Plaintiff Hornafius also requests attorney fees pursuant to the Plan, which provides at ¶ 2.11: "The Company shall pay to each Eligible Employee all reasonable legal fees and expenses incurred by such Eligible Employee in pursuing any claim under the Plan in which such Eligible Employee prevails in any material respect."

The Plan allows recovery of fees incurred in pursuing any claim for benefits, but § 1132(g) limits an award of fees to those incurred in a civil action initiated under § 1132. *See, e.g., LaSelle v. Public Service Co. of Colorado*, 988 F. Supp. 1348, 1352 (D. Colo. 1997). Arguably, the Plan provision therefore allows for broader recovery than does the statute because it allows all reasonable fees and expenses even if they are incurred outside of litigation. Therefore, the Court will determine the reasonableness of fees and costs incurred by Plaintiff Hornafius in accordance with the Plan.

To the extent he was pursuing his own claim for benefits in this action, Plaintiff Hornafius reasonably incurred such fees. However, to the extent he was pursuing certification of a class, he did not pursue his own claim but those of others. Therefore, the fees incurred for the class claim or certification do not fall within the Plan terms. Plaintiff Hornafius apparently agrees with this conclusion, as his motion purports to exclude fees incurred with respect to the class issues and other issues unrelated to his claim for benefits. Thus, the Court declines to award Plaintiff Hornafius attorney fees for pursuit of class claims.

As to the class claims, the Court also declines to award attorney fees to the Defendants. There is no evidence in the record to suggest that the Plaintiffs acted in "bad faith" or conscious wrongdoing in seeking class certification. *See Sterling Energy, Ltd. v. Friendly Nat'l Bank*, 744 F.2d 1433, 1437 (10th Cir. 1984). At most, the Plaintiffs are culpable of wishful thinking. Indeed, in some ERISA cases, class certification may be proper, particularly when numerous, similarly situated individuals are denied plan benefits for identical reasons. In such cases, a single construction of plan documents can impact a larger class of individuals. The fact that the Plaintiffs sought class certification in this case but were unsuccessful does not justify an award of fees to the Defendants.

In quantifying reasonableness attorney fees, a court ordinarily uses a lodestar analysis in which an attorney's reasonable hourly rate is multiplied by the number of hours reasonably expended. *See Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983), *rev'd in part on other grounds*, *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711 (1987); *see also Stark v. PPM America, Inc.,* 354 F.3d 666, 674 (7th Cir. 2004) (ERISA case); *Seitzman v. Sun Life Assurance Co. of Canada, Inc.*, 311 F.3d 477, 487 (2d Cir. 2002) (ERISA case). Attorney fees may be awarded not only for the work of attorneys but also for support staff when such work contributes to the work product of an attorney. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). Time spent establishing an entitlement to fees may also be compensated, but in some circumstances an award of fees for these hours may be reduced when

the fee application is only marginally successful. *See, Hernandez v. George,* 793 F.2d 264, 269 (10th Cir. 1986).

In determining the reasonableness of the hours expended, a court considers several factors. First, it considers whether the fees pertain to tasks that would ordinarily be billed to a client. *See Ramos*, 713 F.2d at 554. If not, a court should take extra care in ensuring that an attorney has not included unjustified charges in his billing statement. *See id.* A court should consider whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering. *See id.* Fees will generally be denied for duplicative services performed by multiple attorneys when a single attorney could have performed the service alone. *See id.* at 554.

The lodestar analysis presumptively results in calculation of a reasonable fee award, and thus adjustments to the lodestar should only be made in rare and exceptional cases. *See Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 564-65 (1986). However, a court should consider the factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), to determine whether the fees should be adjusted upward or downward. *See Homeward Bound, Inc. v. Hissom Memorial Center*, 963 F.2d 1352, 1356 (10th Cir. 1992). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorney; (5) the customary fee

charged for the services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client; (8) the amount involved and the results obtained; (9) the attorney's experience, reputation and ability; (10) whether the case was desirable; (11) the nature and length of the attorney's relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

Here, the Defendants contend that Plaintiff Hornafius' fee award should be reduced because he achieved only partial success in this litigation. In some cases, the partial success of a party may cause a court to limit his fee award. *See Farrar v. Hobby*, 506 U.S. 103, 114-15 (1992). However, this case does not involve partial success. Plaintiff Hornafius was completely successful on his own claim for benefits. He was unsuccessful only in his attempt to assert claims on behalf of a class. Indeed, had the Court allowed the class claims to proceed, Plaintiff Hornafius would have achieved no additional benefit. The only people who would have benefitted from the assertion of class claims would be the class members and the Plaintiffs' attorneys. Thus, the Court rejects the Defendants' argument that Plaintiff Hornafius did not completely prevail on his claim.

Plaintiff Hornafius contends he is entitled to attorney fees for work performed by attorneys and staff at Allen & Vellone in the total amount of $153,376. He also seeks to recover fees for work performed by attorneys and staff at Berger & Montague in the amount of $185,781.12. The total of these sums is $339,157.12.

For the fees pertaining to work by Allen & Vellone, Plaintiff Hornafius has submitted a billing statement which shows all work performed by Allen & Vellone since November of 1999, as well as an Affidavit from Kevin Allen which establishes that the hourly rates charged by the attorneys and staff are reasonable. The Defendants do not challenge the reasonableness of the hourly rates or Plaintiff Hornafius' entitlement to recover reasonable attorney fees. However, they contend that this fee request is excessive given the simple nature of Plaintiff Hornafius' claim, the absence of disputed facts, the limited nature of ERISA review and Plaintiff Hornafius' ultimate recovery. They have submitted an affidavit from Clinton Swift, an attorney with the law firm of Hall & Evans, LLC, who describes a typical ERISA case and the work necessary to perform in such a case. Mr. Swift opines that many of the fees charged are for work not usually performed in ERISA cases. The Defendants also contend that the fee request includes time allocable to the class issues and for unnecessary preparation of multiple complaints and certain discovery requests. They also contend that the fee request pertaining to the preparation of the motion for attorney fees is excessive in view of the amount of fees which can be properly awarded.

For the fees pertaining to work by Berger & Montague, Plaintiff Hornafius has submitted both a billing statement and an affidavit from Jonathan Auerbach of Berger & Monatague. The Defendants do not challenge the reasonableness of the hourly rates charged but instead oppose any recovery of fees for work performed by Berger & Montague on the basis that such work

pertained either to the class issues or to the claim asserted by Plaintiff Maness. According to the exhibits attached to Plaintiff Hornafius' motion, in particular the affidavit of Kevin Allen, Berger & Montague's primary involvement in this case pertained to the class issues and to representing Plaintiff Maness. However, the affidavit of Jonathan Auerbach states that his firm performed some work which contributed to Plaintiff Hornafius' success. Whether Berger & Montague intended to bill Plaintiff Hornafius for such work, whether the work was performed for Plaintiff Hornafius as opposed to Plaintiff Maness, and whether such work was duplicative of work performed by Allen & Vellone is not clear from the materials submitted.

It is clear that there are factual disputes as to the reasonableness of the fees incurred by Plaintiff Hornafius. However, the issues are not precisely framed. The Defendants request a 33% to 90% reduction in Plaintiff Hornafius' attorney fees without providing a methodology for such reduction. Plaintiff Hornafius states that some reduction has been made to account for class action work, but no description of the methodology used for such reduction has been supplied. Thus, quantification of a reasonable sum for attorney fees will require both refinement of the disputed charges followed by an evidentiary hearing.

The Court record reflects that costs were taxed in the amount of $860.80 pursuant to 28 U.S.C. § 1920. Plaintiff Hornafius now requests an additional award of $20,534.70 in costs under § 1132(g) and the Plan.

The Defendants oppose this. They contend that under ERISA, Plaintiff Hornafius may

recover only the costs authorized by 28 U.S.C. § 1920. They further contend that many of the costs requested by Plaintiff Hornafius are not sufficiently described to be recoverable.

Plaintiff Hornafius may recover reasonable costs under the term of the Plan previously identified. The question is whether the $20,534.70 in costs were reasonably incurred. As with the issue of fees, there is a factual dispute at least as to which costs are associated with the class claims as compared to Plaintiff Hornafius' claim. As with the fee issues, this will require an evidentiary hearing.

**IT IS THEREFORE ORDERED** that:

(1) Plaintiff Hornafius' Motion to Alter or Amend Judgment Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to Include Prejudgment Interest and Motion for Leave to Conduct Discovery on Moratory Rate of Interest **(#261)** is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff Hornafius is entitled to recover prejudgment interest at the rate of 8% per annum from July 23, 2002, through the date of judgment.

(2) Plaintiff Hornafius' Application for Award of Attorney Fees and Costs **(#263)** is **GRANTED**. A law and motion hearing is set for **October 28, 2005 at 8:00 a.m.** in Courtroom A901 of the United States Courthouse located at 901 19th Street, Denver, Colorado. Counsel shall bring their calendars. Prior to the hearing, counsel shall meet and confer to review all fee and cost records to determine what

charges are in dispute. At the hearing, counsel shall be prepared to identify the specific charges in dispute, the nature of such dispute (*i.e.*, whether the charges are excessive or insufficiently detailed), the length of the hearing necessary to resolve the dispute and whether the hearing is to be conducted by the undersigned, a magistrate judge or a special master.

(3) The Defendants' Motion for Attorney Fees with Respect to Class Proceedings **(#262)** is **DENIED**.

(4) The Stipulated Motion to Revise Judgment **(#300)** is **GRANTED**. After quantification of the attorney fees and costs awardable to Plaintiff Hornafius, the parties shall jointly submit an amended form of judgment.

Dated this 16th day of September, 2005.

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
United States District Judge